# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| ANTHONY TRIVAYL PATTERSON,<br><br>*Plaintiff*,<br><br>v.<br><br>YKK (USA) INC.,[1]<br><br>*Defendant*. | CIVIL ACTION NO.<br>5:24-cv-00258-TES |

**ORDER**

In his Complaint [Doc. 1], pro se Plaintiff Anthony Trivayl Patterson asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2000e-17, claims for disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112–12117, and claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. [Doc. 4-1]. He also purports to bring a claim for race discrimination under 42 U.S.C. § 1981 and related state-law claims under Georgia's Fair Employment Practices Act ("GFEPA"), O.C.G.A. §§ 45-19-29 and 45-19-

---

[1] As the Court explained in its Order to Recast Complaint [Doc. 3], "a recast complaint takes the place of and supersedes the original complaint." In Plaintiff's Recast Complaint [Doc. 4], he only lists YKK (USA) Inc. as a named defendant. Accordingly, the Clerk is **DIRECTED** to terminate Staci Uselton, Lee Chancey, Emily Tiller, Brian Fletcher, and YKK North and Central America Group as defendants in this action.

31. [*Id.*].[2]

### A. <u>Legal Standard</u>

Since Plaintiff is proceeding *in forma paurperis*,[3] 28 U.S.C. § 1915(e) requires the Court to review his Complaint to determine whether it is frivolous or malicious or fails to state a claim for which relief may be granted.[4] 28 U.S.C. § 1915(e)(2)(B)(i)–(ii). The proper contours of the term "frivolous," have been defined by the Supreme Court to encompass complaints that, despite their factual allegations and legal conclusions, lack an arguable basis either in law or in fact. *Neitzke v Williams*, 490 U.S. 319, 325 (1989). These types of complaints are subject to sua sponte dismisal by a district court. *Id.* at 324 (noting that dismissals under § 1915(e) "are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints[]").

More specifically, to survive this initial screening, a claim must contain "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Federal Rule of Civil Procedure 12(b)(6)

---

[2] Plaintiff also asserts state-law claims under O.C.G.A. §§ 34-7-20 and 34-7-23 related to employer care in the workplace and assumption of risk by employees, respectively, and a violation of a local Macon-Bibb County ordinance. [Doc. 4, p. 3]; [Doc. 4-1, p. 2].

[3] The Court granted Plaintiff's Motion to Proceed *In Forma Pauperis*. [Doc. 3].

[4] The Eleventh Circuit has determined that "28 U.S.C. § 1915(e), which governs proceedings *in forma pauperis* generally . . . permits district courts to dismiss a case 'at any time' if the complaint 'fails to state a claim on which relief may be granted.'" *Robinson v. United States*, 484 F. App'x 421, 422 n.2 (11th Cir. 2012) (per curiam); *see also* 28 U.S.C. § 1915(e)(2)(B)(ii).

"authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke*, 490 U.S. at 326 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Such dismissal procedure—operating on the assumption that the factual allegations in the complaint are true—streamlines litigation by dispensing with unnecessary discovery and factfinding. *Id.* "Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously unsupportable." *Id.* at 327. To the contrary, if it is clear, as a matter of law, that no relief could be granted under "any set of facts that could be proven with the allegations," a claim must be dismissed. *Id.* (quoting *Hishon*, 467 U.S. at 73).

Frivolity review under § 1915(e), on the other hand, has a separate function. Section 1915(e) is designed to discourage the filing of—and waste of judicial and private resources upon—baseless lawsuits that paying litigants generally do not initiate due to filing costs and the potential threat of sanctions associated with filing such a lawsuit. *Id.* "To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of [a] complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* Even though Rule 12 and § 1915(e) both counsel dismissal and share "considerable common ground" with each other, one dismissal standard does not invariably encompass the other. *Id.* at 328. "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against [a]

3

plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate, but dismissal on the basis of frivolousness is not." *Id.*

### B. Plaintiff's Complaint[5]

According to Plaintiff's Complaint, he claims that on and off since June 2016 through September 2023, that he has been subjected to race and disability discrimination. To start, Plaintiff alleges that "representatives of YKK (USA) Inc. have exploited the Drug-Free Workplace Policy to target a specific protected group within the Dye Department on the third shift, leading to discriminatory practices." [Doc. 4-1, p. 4]. He claims that these practices "disproportionately affect[] African American employees[.]" [*Id.*]. In 2017, Plaintiff requested—and YKK granted—a shift preference change to the second shift to "reduce discrimination and enhance job security." [*Id.*]. Following this request, in October 2018, Plaintiff experienced the loss of his grandmother and requested the typical three days for grief, as allowed by YKK policy. [*Id.*]. YKK only granted him two days leave. [*Id.*]. Two years later, in September 2020, Plaintiff lost his other grandmother. [*Id.*]. Once again, YKK only granted him two days "for grief." [*Id.* at p. 5]. Plaintiff claims these incidents show he was "treated unfairly and denied employer benefits due to [his] protected status and race." [*Id.*].

Separately, Plaintiff alleges that during the COVID-19 pandemic, he exercised his

---

[5] Complaints filed by pro se parties are construed liberally, and their allegations are held to a less stringent standard than formal pleadings drafted by lawyers. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003).

4

rights under the Occupational Safety and Health Act of 1970 ("OSHA") to maintain social distancing from other employees who were "not adhering to CDC guidelines." [*Id.*]. Plaintiff claims that he stood outside, waiting for the foyer area around the time clock to clear out, so that he would not be exposed to others. [*Id.*]. During that time, a supervisor "of the same race but a different gender" told him he should not be outside. [*Id.*]. The next day, Plaintiff alleges he was demoted and transferred because of his exercise of the rights secured by OSHA. [*Id.* at pp. 5–6]. Plaintiff claims he complained to Quinn Pinnell and Lee Chancey regarding this incident. [*Id.* at p. 6].

Plaintiff also claims that YKK violated his FMLA rights in October 2020, by giving him a disciplinary notice following his short-term medical leave for a "spontaneous pneumothorax." [*Id.*]. Plaintiff then went to human resources regarding the write-up and FMLA absences. [*Id.* at p. 7].

Between April 2021, and June 2022, Plaintiff alleges various instances of what he claims to be a "hostile work environment." [*Id.* at pp. 8–11]. Then, in August 2022, Plaintiff alleges that he complained to human resources about "race and associational discrimination," as well as "a hostile environment, safety concerns, retaliation, and workplace protection." [*Id.* at p. 11]. Plaintiff claims that various employees continued to harass and badger him regarding his complaints. [*Id.*].

Finally, in December 2022, supervisors sent Plaintiff home following a reprimand for production errors. [*Id.* at p. 13]. Then, in January 2023, Plaintiff once again faced

discipline for being out of his work area. [*Id.*]. Following these events, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on January 27, 2023. The charge laid out the following details:

> I. I was hired by the above-named employer on June 21, 2016, as a PF Dryer Operator, Grade 3. I am currently a Color Technician Specialist, Grade 5. Since in or around January 2021, I have been constantly targeted by Brian Fletcher, Dye Department 2nd Shift Manager, and Emily Tribble, Dye Department Section 2nd shift manager. In or around May 2022, I requested additional overtime hours. The hours were denied to me and given to others. On August 04, 2022, I was written up by Mr. Fletcher. That same day, I made a complaint to Staci Uselton, Human Resources Director, regarding the unfair treatment I was receiving compared to employees outside of my race. On December 13, 2022, Ms. Tribble wrote me up for an issue that employees outside of my race were not being written up for. That same day, I notified Mr. Fletcher and Ms. Uselton of my disability. On January 4, 2023, I was verbally reprimanded by Mr. Fletcher. On January 25, 2023, I took leave because of my disability and was disciplined.
>
> II. I was told I was being reprimanded on January 4, 2023, for being out of my assigned area. Mr. Fletcher informed me I was being disciplined on January 25, 2023, for leaving the job site.
>
> III. I believe I have been discriminated against because of my race (African American), and in retaliation for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of my disability, in violation of Title I of the Americans with Disabilities Act of 1990, as amended.

On May 2, 2024, the EEOC issued Plaintiff a right-to-sue letter, [Doc. 4-2], and on July 29, 2024, Plaintiff filed the present action. [Doc. 1].

    **C.**    <u>**Discussion**</u>

Before suing under either Title VII or the ADA, an aggrieved employee must first exhaust the required federal administrative remedies by filing a charge of

6

discrimination with the EEOC. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). "Exhaustion serves one primary purpose: to allow the EEOC to 'have the first opportunity to investigate the alleged discriminatory practices [so that it can] perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Collins v. Navicent Health, Inc.*, 499 F. Supp. 3d 1307, 1327 (M.D. Ga. 2020) (quoting *Chesnut v. CC Servs., Inc.*, No. 5:18-CV-404 (MTT), 2020 WL 1433876, at *4 (M.D. Ga. Mar. 24, 2020)). In light of the purpose of the EEOC exhaustion requirement, the Eleventh Circuit has held that a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004). With this in mind, the Court notes that "new acts of discrimination [lodged in a judicial complaint] are inappropriate." *Batson v. Salvation Army*, 897 F.3d 1320, 1327 (11th Cir. 2018) (quoting *Gregory*, 355 F.3d at 1280).

In Georgia, because it is a non-deferral state,[6] an aggrieved employee must file a charge of discrimination with the EEOC within 180 days of the date of the alleged

---

[6] "Non-deferral states" are those states without any laws banning various types of discrimination in the workplace and without a state entity authorized to grant or to seek relief for victims of such discrimination. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 n.20 (11th Cir. 1996); *Wilkerson*, 270 F.3d at 1317 (discussing that for a charge regarding discrimination under Title VII "to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act[]"); *Sheffield v. United Parcel Serv., Inc.*, 403 F. App'x. 452, 454 n.2 (11th Cir. 2010) (quoting *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1214 n.2 (11th Cir. 2001)) (recognizing that "Georgia is a non-deferral state because it is without 'laws banning age discrimination in employment and without state entities authorized to grant or seek relief for victims of age discrimination[]'").

discrimination. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A); *see also* 29 C.F.R. § 1626.7. It has long since been the rule in the Eleventh Circuit that the 180 days begins running from the date the employee knows or reasonably should have known that he has been discriminated against. *Hill v. Metro. Atlanta Rapid Transit Auth.*, 841 F.2d 1533, 1545 (11th Cir. 1988). Stated differently, discrete acts of discrimination and relation that "occurred prior to the date of the EEOC charge" typically may not be included in a judicial complaint because they are not exhausted. *Thomas v. Miami Dade Pub. Health Tr.*, 369 F. App'x 19, 22–23 (11th Cir. 2010).

Only those claims arising within 180 days of the filing of a charge are actionable. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)). Untimely claims are barred and fail to state a claim upon which relief would be granted. *Id.*

And although "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," it is, however, a statutory requirement. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 398 (1982). Even more, "where the untimeliness of an action is clear from the face of the complaint and the plaintiff has been granted leave to proceed [*in forma pauperis*], the court may dismiss sua sponte under 28 U.S.C. § 1915(e)(2)(B)(ii)." *Dauphin v. Geren*, No. CV409-141, 2009 WL 3233148, at *1 (S.D. Ga. Oct. 7, 2009); *see also Patrick v. Ala. Dep't of Pub. Health*, No. 2:20-CV-985-MHT-CWB, 2022 WL 18161610, at *2 (M.D. Ala. Nov. 30, 2022); *Pino v. Ryan*, 49

F.3d 51, 53 (2d Cir. 1995). To be sure, a "complaint may be dismissed if an affirmative defense, such as failure to exhaust, appears on the face of the complaint." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011); *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 641 n.2 (11th Cir. 1990) ("When the defense is apparent from the face of the complaint or the court's records, courts need not wait and see if the defense will be asserted in a defensive pleading.").

Plaintiff's Complaint is replete with references to actions occurring as early as 2016. But, Plaintiff filed his EEOC charge on January 27, 2023. [Doc. 4-3]. Therefore, the operative date becomes 180 days prior to January 27, 2023—which is July 31, 2022. Everything in Plaintiff's Complaint before July 31, 2022, then, cannot be the basis for a timely discrimination claim. Put another way, if the alleged discrimination occurred before July 31, 2022, it was not properly asserted before the EEOC and is time-barred in this Court.

Likewise, anything that occurred after Plaintiff filed his EEOC charge is barred because he failed to exhaust administrative remedies as to those claims. *Duble v. FedEx Ground Package Sys., Inc.*, 572 F. App'x 889, 893 (11th Cir. 2014) ("Duble's EEOC claim was still pending, when he was terminated, ostensibly for violating FedEx's email policy, and he had the opportunity to amend his EEOC charge or file a new charge relating to his termination. Duble, however, chose not to amend or file a new charge. Therefore, Duble failed to exhaust his administrative remedies regarding his

9

termination claims.").[7]

Accordingly, the Court **DISMISSES** Plaintiff's Title VII and ADA claims that arose before July 31, 2022, or after January 27, 2023, **with prejudice**. As for the remaining Title VII and ADA claims, Plaintiff alleges sufficient information to survive frivolity review. *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (noting that a claim need only have a "plausible chance of success" to survive frivolity review).[8]

Plaintiff also alludes to FMLA claims arising from discipline he faced following his temporary absence based on illness. [Doc. 4-1, p. 6]. Plaintiff claims that these events occurred in October 2020. [*Id.*]. But, the FMLA's statute of limitations is two years (three years for intentional violations). *Smith v. St. Joseph's/Candler Health Sys., Inc.*, 770 F. App'x 523, 526 (11th Cir. 2019). Even under the most lenient statute of limitations period, Plaintiff's FMLA claims are time-barred, and the Court **DISMISSES** those

---

[7] *Cf. Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981) (holding that a district court may have ancillary jurisdiction over a claim arising out of an EEOC charge without further exhaustion if the EEOC charge is already "properly before the court"). Here, though, Plaintiff's "new" retaliation claims based on his EEOC charge occurred before he filed this action. Therefore, he was required to exhaust administrative remedies as to those new occurrences before bringing the claims in this case.

[8] To be clear, the Court expresses no opinion on whether Plaintiff's allegations are sufficient to state a claim for Rule 12(b)(2) purposes. *See McCullough v. Metro YMCA*, No. 1:21-cv-00548-CC-AJB, 2021 WL 4868435, at *3 (N.D. Ga. Feb. 2, 2021) (citation omitted) ("A complaint also may fail to state a claim under Rule 12(b)(6) yet not automatically be frivolous."); *Murphy v. Warren*, No. 1:12-cv-3317-WSD, 2015 WL 363023, at *6 n.1 (N.D. Ga. Jan. 27, 2015) ("[T]he Court's initial frivolity screening review, which was undertaken before Defendants were served and appeared, does not preclude a subsequent deeper analysis of whether the [c]omplaint states a claim with the assistance of fully-briefed motions under Rule 12(b)(6).").

claims **with prejudice**.[9]

As for Plaintiff's state-law claims, Georgia law does not "recognize a claim for discrimination by a private employer based on race." *Guilford v. MarketStar Corp.*, No. 1:08-CV-0336-CC-SSC, 2009 WL 10664954, at *9 (N.D. Ga. Jan. 30, 2009); *Royal v. CEC Ent., Inc.*, No. 4:18-CV-302, 2019 WL 2252151, at *3 (S.D. Ga. May 24, 2019). Plaintiff cites the Georgia Fair Employment Practices Act, but that law "prohibits employment discrimination **by the State** because of race, color, religion, national origin, sex, handicap, or age." *City of Atlanta v. McKinney*, 454 S.E.2d 517, 525 (Ga. 1995) (Carley, J., concurring in part) (emphasis added); *see also* O.C.G.A. § 45-19-21(a) ("The general purposes of this article are: . . . (3) To promote the elimination of discrimination against all individuals in public employment because of such individuals' race, color, religion, national origin, sex, disability, or age thereby to promote the protection of their interest in personal dignity and freedom from humiliation[.]"), *in connection with* § 45-19-22(6) ("'Public employment' means employment by any department, board, bureau, commission, authority, or other agency of the State of Georgia."). Plaintiff's Complaint does not allege that YKK is an arm of the state of Georgia, so there can be no claim against it under the Georgia Fair Employment Practices Act. *Irving v. Enter. Rent-A-Car*, No. 1:06-CV-2167-CC/AJB, 2007 WL 9702315, at *6 (N.D. Ga. Feb. 16, 2007) ("Plaintiff

---

[9] To the extent Plaintiff intends to bring "associational disability" claims based on his son's illnesses, those are brought under the ADA, not the FMLA. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999).

cannot bring discrimination and retaliation claims against Defendants under FEPA because they are not public employers.").

Additionally, Plaintiff's claims under O.C.G.A. §§ 34-7-20 and 34-7-23—statutes regarding an employer's liability based on the negligent selection and retention of employees—fail as a matter of law. As numerous courts have explained, "federal claims for employment discrimination or retaliation will generally not support a claim under Georgia law for negligent supervision and retention." *Smith v. Outdoor Network Distrib., LLC*, 626 F. Supp. 3d 1320, 1348 (M.D. Ga. 2022). "Even though O.C.G.A. § 34-7-20 deals with whether an employer may be liable for hiring or retaining an employee the employer knows is not suited for the particular employment, 'Plaintiffs essentially attempt to create a [state-law] negligence cause of action for discrimination in employment.'" *Collins*, 499 F. Supp. 3d at 1348 (citing *Graham v. City of Duluth*, 759 S.E.2d 645, 650–51 (Ga. Ct. App. 2014)). But, "[t]he State of Georgia has not recognized a state law negligence cause of action for discrimination in employment[.]" *McKenzie v. S. Nuclear Operating Co.*, No. CV 120-157, 2021 WL 5494789, at *7 (S.D. Ga. Sept. 21, 2021). That means Plaintiff's claims under § 34-7-20 and § 34-7-23 fail. Accordingly, Plaintiff's Georgia-law claims are **DISMISSED with prejudice**.

Finally, as for Plaintiff's claims arising under the Macon-Bibb County Code of Ordinances, there is no private cause of action for discrimination in the Code. Instead, § 19-50(b) instructs that the "appropriate proceedings may be brought by Macon-Bibb

County to enforce [the antidiscrimination] provisions." Macon-Bibb Cnty. Ord. § 19-50(b). Even more, the antidiscrimination provisions only apply to contractors working for Macon-Bibb County. *Id.* at § 19-42 ("Macon-Bibb County establishes its policy to prohibit *discrimination* by contractors and subcontractors who do business with Macon-Bibb County against any employee or applicant for employment because of race, color, creed, religion, sex, domestic relationship status, parental status, familial status, sexual orientation, national origin, gender identity, age, disability, or political affiliation."). Plaintiff's Complaint does not allege that YKK contracts with Macon-Bibb County in a manner that would provide liability under Macon-Bibb County's Code of Ordinances, and even if it did, this Court is not the proper forum for such a complaint. Therefore, the Court **DISMISSES** Plaintiff's claims under Macon-Bibb County's Code of Ordinances **with prejudice**.

## CONCLUSION

Based upon the foregoing, it is **ORDERED** that service be made on Defendant YKK (USA), Inc. by a United States marshal or deputy marshal pursuant to Federal Rule of Civil Procedure 4(c)(3).[10] Upon service, YKK may file an answer or other response as may be appropriate under Federal Rule of Civil Procedure 12 or 28 U.S.C. § 1915. YKK is reminded of the duty to avoid unnecessary service expenses and of the

---

[10] According to the Georgia Secretary of State's records, YKK (USA), Inc.'s registered agent is the Corporation Service Company at 2 Sun Court, Suite 400, Peachtree Corners, Georgia, 30092.

possible imposition of expenses for failure to waive service pursuant to Federal Rule of Civil Procedure 4(d).

    **SO ORDERED**, this 19th day of August, 2024.

                                                     *S/ Tilman E. Self, III*
                                                     **TILMAN E. SELF, III, JUDGE**
                                                     **UNITED STATES DISTRICT COURT**